**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| GRANT DUNN, on behalf of his minor child, S.P.D., and all others similarly situated, LINDZEE MCKATIMS, on behalf of her minor child, R.M., and all others similarly situated, and LINH-AI LE, on behalf of her minor child, A.T., and all others similarly situated,<br>Plaintiffs,<br>v.<br>SEATTLE CHILDREN'S HOSPITAL,<br>Defendant. | Case No.<br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiffs Grant Dunn, Lindzee McKatims, and Linh-Ai Le ("Plaintiffs"), on behalf of their minor children, S.P.D., R.M., and A.T. (the "Minor Plaintiffs"), and all similarly situated persons, allege the following against Defendant Seattle Children's Hospital ("Seattle Children's" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by their counsel and review of public documents as to all other matters:

## I. INTRODUCTION

1. Information concerning an individual's health is among the most sensitive, and closely guarded information in our society. The unwanted disclosure of such information can be enormously



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

harmful. It can result in discrimination in the workplace, and denial of insurance coverage. And, if people are unable to believe that their sensitive health information will be kept confidential, they are much less likely to seek medical care when they need it most.

2. This sensitivity is particularly acute with regards to the health information of children. As one study put it, children today are growing up in "datafied childhoods" marked by unprecedented monitoring and collection of data online.[1] This cradle-to-grave monitoring allows for advertisers to build "invasive profiles that can identify . . . very sensitive and intimate parts of their lives"[2] and that follow them for the rest of their lives.

3. Seattle Children's is one of the premier children's hospitals in the country, offering comprehensive pediatric care, including specialized medical services, urgent care, and research programs to children across Washington, Alaska, Montana, and Idaho.[3]

4. Through the Seattle Children's website, https://www.seattlechildrens.org/ (the "Website"), patients can search for doctors by name or by specialty, schedule and modify appointments, view medical records and test results, and pay their bills.

5. Unfortunately, unbeknownst to Plaintiffs and other parents of patients of Seattle Children's, their children's private personal and health information was not actually being kept private. Instead, through the Website, Defendant collected and transmitted personally identifiable, sensitive information pertaining to its patients, including the fact that they are patient of Seattle Children's, the specific condition they are seeking treatment for, the specific doctor they are seeking or receiving

[1] *See* Eline L. Leijten & Simone van der Hof, *Dissecting the commercial profiling of children: A proposed taxonomy and assessment of the GDPR, UCPD, DSA, and AI Act in light of the precautionary principle*, 57 COMPUTER L. & SEC. REV. 1, 3 (2025).
[2] *Id.*
[3] *About Seattle Children's*, SEATTLE CHILDREN'S, https://www.seattlechildrens.org/about/ (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

treatment from, and information relating to bills and financial aid (collectively, "Sensitive Health Information"), to unauthorized third parties, including Alphabet, Inc. ("Google"), Microsoft Corporation ("Microsoft"), and Tealium Inc. ("Tealium" and together with Google and Microsoft, the "Tracking Tool Providers"), through the use of surreptitious online tracking tools.

6. Online advertising giants, like the Tracking Tool Providers, compile as much information as possible about American consumers, including information relating to the most private aspects of their lives. This information is then used to fuel for a massive, targeted advertising enterprise.

7. Thus, any information about a person captured by these online behemoths can be used to stream ads to that person, among other uses. For example, if a Tracking Tool Provider receives information that a person suffers from diabetes, it will collect that information and allow its clients to use that information to stream ads related to related to blood sugar management products.

8. The Tracking Tool Providers offer website operators access to its proprietary suites of marketing, advertising, and customer analytics software, including Google's *Google Analytics*, *Google AdSense* and *Google Tag Manager* products; Microsoft's *Microsoft Advertising*, *Bing Ads*, and *Azure* products; and Tealium's AI-powered *Tealium Analytics* (collectively, the "Business Tools"). Armed with these Business Tools, website operators can leverage the Tracking Tool Providers' enormous databases of consumer information for the purposes of deploying targeted advertisements, performing minute analyses of their customer bases, and identifying new market segments that may be exploited.

9. The Tracking Tool Providers' massive databases of consumer information can only exist with the help of users of their Business Tools, like Defendant. To use any one of the Tracking Tool Providers' Business Tools, a website operator must install the Tracking Tool Provider's internet



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

surveillance software on their website, including 'tracking pixels' ("Pixels") and third-party 'cookies' (collectively, the "Tracking Tools"). In other words, if a website operator wishes to use, e.g., Google Analytics, it must install Google's Tracking Tools onto its website.

10. After being installed, the Tracking Tools capture detailed information about every visitor to the website, which may include the specific webpages visited by a website user, information entered into an online form by a website user, and the device characteristics of a website user's phone or computer. Moreover, this sensitive information often includes a unique identifier that the Tracking Tool Providers use to identify that user, regardless of what computer or phone is used to access the website.

11. In essence, when website operators use the Tracking Tool Providers' Business Tools, they choose to participate in their mass surveillance networks and, in turn, benefit from the Tracking Tool Providers' collection of user data at the expense of their website users' privacy.

12. Defendant has chosen to prioritize its marketing efforts and profits over its patients' privacy by installing Tracking Tools on its Website.

13. Plaintiffs and Class Members used the Website for their children's medical care, and had their children's personal Sensitive Health Information tracked by Defendant using the Tracking Tools. However, Defendant ***never*** obtained authorization from Plaintiffs or Class Members to share their children's Sensitive Health Information with third parties. At all times relevant to this action, Plaintiffs and Class Members gave no informed consent for their children's Sensitive Health Information to be transmitted to the third parties, including the Tracking Tool Providers.

14. Worse, for the patients who explicitly choose to reject Defendant's use of "non-essential technologies" – like the Tracking Tools – on the Website through Defendant's privacy settings banner (the "Consent Banner"), Defendant continues to track and disclose those patients'



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Sensitive Health Information. Defendant's attempt to obtain meaningful consent from patients for its use of Tracking Tools through the Consent Banner is, therefore, illusory.

15. Health information is highly regulated by both state and federal law, including through the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*, and through the Washington My Health My Data Act ("MHMDA"), Wash. Rev. Code Ann. § 19.373.005, *et seq.*, both of which prohibit the disclosure of health information without explicit, informed consent. Accordingly, Defendant's disclosure of Plaintiffs' and Class Members' children's Sensitive Health Information constitutes a violation of HIPAA and Washington law.

16. As a result of Defendant's conduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of medical privacy; (ii) lack of trust in communicating with medical providers; (iii) emotional distress and heightened concerns related to the release of their children's Sensitive Health Information to third parties, (iv) loss of benefit of the bargain; (v) diminution of value of their children's Sensitive Health Information; (vi) statutory damages and (vii) continued and ongoing risk to their children's Sensitive Health Information.

17. Therefore, Plaintiffs seek, on behalf of their children and a class of similarly situated persons, to remedy these harms and assert the following statutory and common law claims against Defendant: Invasion of Privacy – Intrusion Upon Seclusion; Breach of Fiduciary Duty; Negligence; Breach of Implied Contract; Unjust Enrichment; violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), *et seq*.; and violations of the Washington Consumer Protection Act.

## II. PARTIES

***Plaintiff Grant Dunn and S.P.D.***

18. Plaintiff Dunn is a citizen of the State of Washington, residing in King County, and brings this action on behalf of his two-and-a-half year old son, S.P.D., and on behalf of all others similarly situated.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

19. In early 2024, Plaintiff Dunn first utilized the Website on his personal electronic device to schedule an appointment with Defendant for a procedure S.P.D. needed. He has since used the Website to schedule other appointments, view S.P.D.'s medical records, and to pay bills.

20. Unbeknownst to Plaintiff Dunn, the Website transmitted Sensitive Health Information related to S.P.D.'s medical care to unauthorized third parties.

21. Plaintiff Dunn never authorized Defendant to disclose any aspect of his communications with Defendant through the Website to third parties, including S.P.D.'s Sensitive Health Information that he provided through the Website.

22. On every occasion that he visited the Website, Plaintiff Dunn possessed an account with Google, and he accessed the Website while logged into her Google account on the same device.

23. After providing S.P.D.'s Sensitive Health Information to Defendant through the Website, Plaintiff Dunn immediately began seeing targeted advertisements for Seattle Children's on social media.

***Plaintiff Lindzee McKatims and R.M.***

24. Plaintiff McKatims is a citizen of the State of Washington, residing in Snohomish County, and brings this action on behalf of her four-year-old son, R.M.., and on behalf of all others similarly situated.

25. Between approximately May 2022 and November 2025, Plaintiff McKatims utilized the Website on her personal electronic device to schedule appointments for R.M. with Defendant related to numerous medical issues, including multiple ear infections, influenza infections, and other illnesses. She has also used the Website to schedule other appointments, view R.M.'s medical records, and to pay bills.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

26. Unbeknownst to Plaintiff McKatims, the Website transmitted Sensitive Health Information related to R.M.'s medical care to unauthorized third parties.

27. Plaintiff McKatims never authorized Defendant to disclose any aspect of her communications with Defendant through the Website to third parties, including R.M.'s Sensitive Health Information that she provided through the Website.

28. On every occasion that she visited the Website, Plaintiff McKatims possessed accounts with Google and Microsoft, and she accessed the Website while logged into her Google account on the same device.

29. After providing R.M.'s Sensitive Health Information to Defendant through the Website, Plaintiff McKatims immediately began seeing targeted advertisements for Seattle Children's on social media.

***Plaintiff Linh-Ai Le and A.T.***

30. Plaintiff Le is a citizen of the State of Washington, residing in King County, and brings this action on behalf of her minor daughter, A.T., and on behalf of all others similarly situated.

31. In early 2025, Plaintiff Le utilized the Website on her personal electronic device to schedule an urgent care appointment with Defendant for A.T. when she had an ear infection. She has since used the Website to pay bills.

32. Unbeknownst to Plaintiff Le, the Website transmitted Sensitive Health Information related to A.T.'s medical care to unauthorized third parties.

33. Plaintiff Le never authorized Defendant to disclose any aspect of her communications with Defendant through the Website to third parties, including A.T.'s Sensitive Health Information that she provided through the Website.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

34. On every occasion that she visited the Website, Plaintiff Le possessed an account with Google, and she accessed the Website while logged into her Google account on the same device.

35. After providing A.T.'s Sensitive Health Information to Defendant through the Website, Plaintiff Le immediately began seeing targeted advertisements for Seattle Children's on social media.

***Defendant Seattle Children's Hospital***

36. Defendant Seattle Children's is a nonprofit corporation incorporated in the State of Washington with its principal place of business at 4800 Sand Point Way NE, MS 818-LE, Seattle, WA, in King County.

## III. JURISDICTION AND VENUE

37. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members and minimal diversity exists because many putative class members are citizens of a different state than Defendant. Indeed, Defendant serves patients across Washington, Alaska, Montana, and Idaho.[4] Additionally, this Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this Complaint asserts a claim for violation of federal law, specifically, the ECPA, 18 U.S.C. § 2511. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

38. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this judicial district and provides medical care in this District, including to Plaintiffs' children. Further, the acts giving rise to Plaintiffs' claims, including Defendant's decisions regarding

---

[4] *About Seattle Children's*, SEATTLE CHILDREN'S, https://www.seattlechildrens.org/about/ (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

management of the Website and the incorporation of the Tracking Tools, were purposefully directed from this District.

39. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)-(d) because: a substantial part of the events giving rise to the claims in this action occurred in this judicial district, including decisions made by Defendant's governance and management personnel or inaction by those individuals that led to the unauthorized sharing of Plaintiffs' children's and Class Members' Sensitive Health Information; Defendant's principal place of business is located in this District; Defendant collects and redistributes Plaintiffs' children's and Class Members' Sensitive Health Information in this District; and Defendant caused harm to Plaintiffs and Class Members residing in this District.

## IV. FACTUAL ALLEGATIONS

### A. DEFENDANT'S USE OF THIRD-PARTY TRACKING TECHNOLOGIES

#### i. The Tracking Tool Providers' Mass Advertising Surveillance Operation

40. Google is the largest digital advertiser in the country, accounting for 26.8-percent of the total digital advertising revenue generated in the United States.[5] In 2023, Google's advertising revenue of $238 billion accounted for 77-percent of its total revenue for the year.[6]

41. Google advertises Google Analytics and other Business Tools to website operators, like Defendant, claiming they will allow the operator to "[u]nderstand [their] site and app users," "check

[5] *Share of major ad-selling companies in digital advertising revenue in the United States*, STATISTA (May 2024), https://www.statista.com/statistics/242549/digital-ad-market-share-of-major-ad-selling-companies-in-the-us-by-revenue/#:~:text=In%202023%2C%20Google%20accounted20 for,21.1%20 and%2012.5%20percent%2C%20respectively https://www.scientificamerican.com/ article/7-in-10-smartphone-apps-share-your-data-with-third-party-services/ (last visited May 1, 2026).

[6] Florian Zandt, *Google's Ad Revenue Dwarfs Competitors*, STATISTA (Sep. 10, 2024), https://www.statista.com/chart/33017/annual-advertising-revenue-of-selected-tech-companies-offering-search-solutions/#:~:text=Online%20advertising&text=Alphabet%2C%20the%20 company%20behind%20the,overall%20revenue%20this%20past%20year (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

the performance of [their] marketing," and "[g]et insights only Google can give."[7] But, in order for website operators to get information from Google Analytics about their website's visitors, they must allow data collection through installation of Google's Tracking Tools on their website.[8]

42. Indeed, on its *Privacy & Terms* page, Google admits that it collects information from third party websites, stating that "[m]any websites and apps use Google services to improve their content and keep it free. When they integrate our services, these sites and apps share information with Google."[9]

43. Google also admits that it uses the information collected from third party websites, such as the Website, to sell targeted advertising, explaining to users that, "[f]or example, a website that sells mountain bikes might use Google's ad services. After you visit that site, you could see an ad for mountain bikes on a different site that shows ads served by Google."[10]

44. Microsoft is the largest software company in the world, offering a diverse portfolio of product offerings including the Windows operating system, Office 365 software suite, LinkedIn professional social networking site, Xbox video gaming platform, as well as numerous targeted advertising products.[11] In 2024, Microsoft generated over $77-billion in revenue, including $12-billion derived from its advertising products.[12]

---

[7] *Welcome to Google Analytics*, GOOGLE, https://analytics.google.com/analytics/web/provision/?authuser=0#/provision (last visited May 1, 2026).

[8] *See* Aaron Ankin & Surya Matta, *The High Privacy Cost of a "Free" Website*, THE MARKUP, https://themarkup.org/blacklight/2020/09/22/blacklight-tracking-advertisers-digital-privacy-sensitive-websites (last visited May 1, 2026).

[9] *Privacy & Terms – How Google uses information from sites or apps that use our services*, GOOGLE, https://policies.google.com/technologies/partner-sites (last visited May 1, 2026).

[10] *Id.*

[11] *Annual Report 2024,* MICROSOFT (Oct. 18, 2024), *available online at:* https://www.microsoft.com/investor/reports/ar24/.

[12] *Id.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

45. Similar to Google, website operators using Microsoft's Business Tools must install Microsoft's Tracking Tools on their website. Microsoft readily admits that it:

> generates a unique advertising ID for each person using a device, which app developers and advertising networks can use for their own purposes, including providing relevant advertising in apps. … Microsoft apps and third-party apps can access and use the advertising ID in much the same way that websites can access and use a unique identifier stored in a cookie. Thus, your advertising ID can be used by app developers and advertising networks to provide more relevant advertising and other personalized experiences across their apps and on the web.[13]

46. Microsoft markets its Business Tools to website operators, claiming that its Business Tools can "consolidate user behavior and uncover[] trends, so we can make your website better together for retail, content publishers, small business owners, and everywhere in between."[14]

47. Tealium boasts that it is "the #1 most trusted Customer Data Platform."[15] Tealium markets its Business Tools to website operators, claiming its "data layer approach" helps companies "improve operational efficiency and agility" and take advantage of "real-time engagement opportunities."[16]

48. Tealium admits that its Business Tools track users across devices, sessions, and platforms, enabling its clients to access "comprehensive customer profiles" for "highly personalized" targeting advertising.[17]

49. While the Tracking Tool Providers admit that they collect information from third-party websites through the Tracking Tools, it does not provide, nor could it provide, a publicly available list

---

[13] *Microsoft Privacy Statement*, MICROSOFT, https://www.microsoft.com/en-us/privacy/privacystatement#mainadvertisingidmodule (last visited May 1, 2026).
[14] *Clarity*, MICROSOFT, https://clarity.microsoft.com/ (last visited May 1, 2026).
[15] *About Us*, TEALIUM, https://tealium.com/company/ (last visited May 1, 2026).
[16] *Unlock the Power of Your Data for Informed Decision-Making*, TEALIUM, https://tealium.com/solutions/data-analytics-team/ (last visited May 1, 2026).
[17] *Unleash the Power of Data-Driven Marketing*, TEALIUM, https://tealium.com/solutions/marketing-team/ (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

of every webpage on which their Tracking Tools are installed. As such, the vague descriptions of the Tracking Tool Providers' data collection practices referenced above could not give Plaintiffs and Class Members any reason to think that Defendant was part of the Tracking Tool Providers' surveillance networks. Moreover, as Defendant does not disclose its use of the Tracking Tools, Plaintiffs and Class Members could not have been reasonably expected to review any of the Tracking Tool Providers' privacy statements in connection with their use of the Website.

50. The Tracking Tool Providers aggregate the user information that they collect from third-party websites into 'advertising profiles' consisting of all of the data that it has collected about a given user.[18] With these advertising profiles, the Tracking Tool Providers can sell hyper-precise advertising services, allowing their clients to target internet users based on combinations of their location, age, race, interests, hobbies, life events (e.g., recent marriages, graduation, or relocation), political affiliation, education level, home ownership status, marital status, household income, type of employment, use of specific apps or websites, and more.[19]

51. The Tracking Tool Providers' surveillance of individual's internet usage is ubiquitous. In 2017, Scientific American reported that over 70-percent of smartphone apps report "personal data to third-party tracking companies like Google,"[20] and Google trackers are present on 74-percent of all web traffic.

---

[18] Bennett Cyphers & Gennie Gebhart, *Behind the One-Way Mirror: A Deep Dive Into the Technology of Corporate Surveillance*, ELECTRONIC FRONTIER FOUNDATION (2019), *available online at*: https://www.eff.org/files/2019/12/11/behind_the_one-way_mirror-a_deep_dive_into_the_technology_of_corporate_surveillance_0.pdf.

[19] *About audience segments*, GOOGLE ADS, https://support.google.com/google-ads/answer/2497941?hl=en#zippy=%2Cin-market-segments%2Caffinity-segments%2Clife-events%2Cdetailed-demographics (last visited May 1, 2026).

[20] Narseo Vallina-Rodriguez & Srikanth Sundaresan, *7 in 10 Smartphone Apps Share Your Data with Third-Party Services*, SCIENTIFIC AMERICAN (May 30, 2017), https://www.scientificamerican.com/article/7-in-10-smartphone-apps-share-your-data-with-third-party-services/ last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

52. Moreover, as in this case, the data collected by the Tracking Tool Providers often pertains to the most personal and sensitive aspects of an individual's life. For example:

a. 93-percent of pornography websites allow third parties, including Google, to collect their user's browsing habits.[21] In fact, Google advertising trackers were found on 73-percent of pornography websites.[22]

b. 81-percent of the most popular mobile apps for managing depression and quitting smoking allowed Facebook and/or Google to access subscriber information, including health diary entries and self-reports about substance abuse.[23]

c. Twelve of the largest pharmacy providers in the United States send information regarding user's purchases of products such as pregnancy tests, HIV tests, prenatal vitamins, and Plan B to online advertisers.[24] For example, when an online shopper searches for a pregnancy test, views the product page for a pregnancy test, or adds a pregnancy test to their online shopping cart on Kroger's website, that information is transmitted to Google.[25]

53. This monumental, invasive surveillance of Americans' internet usage and resulting violation of their privacy is not accidental. As Google's then-CEO, Eric Schmit, admitted in 2010: "We know where you are. We know where you've been. We can more or less know what you're thinking about."[26]

---

[21] Elena Maris, Timothy Libert & Jennifer R. Henrichsen, *Tracking sex: The implications of widespread sexual data leakage and tracking on porn websites*, NEW MEDIA & SOCIETY (2020), *available online at*: https://journals.sagepub.com/doi/10.1177/1461444820924632.

[22] *Id.*

[23] Kit Huckvale, John Torous & Mark E. Larsen, *Assessment of the Data Sharing and Privacy Practices of Smartphone Apps for Depression and Smoking Cessation*, JAMA NETWORK OPEN (2019), *available online at*: https://pubmed.ncbi.nlm.nih.gov/31002321/.

[24] Darius Tahir & Simon Fondrie-Teitler, *Need to Get Plan B or an HIV Test Online? Facebook May Know About It*, THE MARKUP (June 30, 2023), https://themarkup.org/pixel-hunt/2023/06/30/need-to-get-plan-b-or-an-hiv-test-online-facebook-may-know-about-it (last visited May 1, 2026).

[25] Jon Keegan, *Forget Milk and Eggs: Supermarkets Are Having a Fire Sale on Data About You*, THE MARKUP (Feb. 16, 2023), https://themarkup.org/privacy/2023/02/16/forget-milk-and-eggs-supermarkets-are-having-a-fire-sale-on-data-about-you (last visited May 1, 2026).

[26] Andrew Orlowski, *Google's Schmidt: We know what you're thinking*, THE REGISTER (Oct. 4, 2020), https://www.theregister.com/2010/10/04/google_ericisms/ (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

54. In fact, advertisers value user information so highly that many of them, including Google, provides their Business Tools to website operators for free, all to expand their surveillance apparatuses.[27]

55. When website operators, like Defendant, make use of the Tracking Tool Providers' Business Tools, they are essentially choosing to participate in their mass surveillance networks and, in return, they benefit from the Tracking Tool Providers' collection of user data at the expense of their website users' privacy. For example, Google rewards website operators for providing it with user information by granting such website operators access to its Analytics platform, which then leverages demographic data collected by Google to provide detailed analyses of the website's user base.[28]

56. Unfortunately, it is usually the case that a website operator's use of third-party tracking software is not disclosed whatsoever in its privacy policy.[29] And even where the use of such third-party software is disclosed, such disclosures are often hidden and cloaked in such confusing, technical and overly legal language as to be indecipherable to the typical internet user.[30]

57. Moreover, for even a conscientious internet user, the massive volume of privacy policies encountered through routine internet use makes reviewing each and every one practically impossible. According to one study, it would take the average internet user 244 hours – or 30.5 working days – to read the privacy policy of every new website that they visited in a single year.[31]

---

[27] *Analytics Overview*, GOOGLE, https://marketingplatform.google.com/about/analytics/ (last accessed Mar. 7, 2025) ("Google Analytics gives you the tools, free of charge"),

[28] *Google Marketing Platform – Features*, GOOGLE, https://marketingplatform.google.com/about/analytics/features/ (last visited May 1, 2026).

[29] *See* Woodrow Hartzog, *Privacy's Blueprint*, 60-67 (Harvard University Press 2018) (detailing deficiencies with online privacy policies).

[30] *Id.*

[31] Aleecia M. McDonald & Lorrie Faith Cantor, *The Cost of Reading Privacy Policies*, I/S: A JOURNAL OF LAW AND POLICY FOR THE INFORMATION SOCIETY (2008), *available online at*: https://lorrie.cranor.org/pubs/readingPolicyCost-authorDraft.pdf.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

**ii. Pixels Can Record Almost Every Interaction Between a User and a Website**

58. In order to use the Tracking Tool Providers' Business Tools, Defendant installed their Tracking Tools, including tracking Pixels, onto the Website.

59. Pixels are one of the tools used by website operators to track user behavior. As the Federal Trade Commission ("FTC") explains, a Pixel is:

> [A] small piece of code that will be placed into the website or ad and define [the Pixel operator's] tracking goals such as purchases, clicks, or pageviews….
>
> Pixel tracking can be monetized several ways. One way to monetize pixel tracking is for companies to use the tracking data collected to improve the company's own marketing campaigns…Another is that companies can monetize the data collected by further optimizing their own ad targeting systems and charging other companies to use its advertising offerings.[32]

60. Pixels can collect a shocking amount of information regarding an individual's online behavior—including the webpages viewed by the user, the amount of time spent by the user on specific webpages, the buttons and hyperlinks that the user clicks while using a website, the items that the user adds to an online shopping cart, the purchases that a user makes through an online retailer, the text entered by the user into a website search bar, and even the information provided by the user on an online form—all transmitted in real-time as the user navigates a website.[33]

61. But most internet users are completely unaware that substantial information about their internet usage is being collected through tracking Pixels. The FTC warns that:

> Traditional controls such as blocking third party cookies may not entirely prevent pixels from collecting and sharing information. Additionally, many

---

[32] *Lurking Beneath the Surface: Hidden Impacts of Pixel Tracking*, FEDERAL TRADE COMMISSION – OFFICE OF TECHNOLOGY (Mar. 6, 2023), https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking (last visited May 1, 2026).

[33] *See id.*; *How does retargeting on Facebook help your business?*, META, https://www.facebook.com/business/goals/retargeting (last visited May 1, 2026); Tom Kemp, *"Oops! I Did It Again" … Meta Pixel Still Hoovering Up Our Sensitive Data*, MEDIUM, https://tomkemp00.medium.com/oops-i-did-it-again-meta-pixel-still-hoovering-up-our-sensitive-data-f99c7b779d47#_ftn1 (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

> consumers may not realize that tracking pixels exist because they're invisibly embedded within web pages that users might interact with…Academic and public reporting teams have found that thousands of the most visited webpages have pixels and other methods that leak personal information to third parties.[34]

**iii. The Pixels Installed on the Website Transmit Personally Identifiable Information and Protected Health Information to the Tracking Tool Providers**

62. Every website is hosted by a computer "server" that holds the website's contents.

63. To access a website, individuals use "web browsers." Web browsers are software applications that allow consumers to navigate the web and view and exchange electronic information and communications over the Internet. Each "client device" (such as computer, tablet, or smartphone) accesses web content through a web browser (such as Google's Chrome, Mozilla's Firefox, Apple's Safari, or Microsoft's Edge).

64. Communications between a website server and web browser consist of Requests and Responses. Any given browsing session may consist of hundreds or even thousands of individual Requests and Responses. A web browser's Request essentially asks the website to provide certain information, such as the contents of a given webpage when the user clicks a link, and the Response from the website sends back the requested information – the web pages' images, words, buttons, and other features that the browser shows on the user's screen as they navigate the website.

65. Additionally, on most websites, the Response sent back to the user's web browser directs the browser to create small files known as 'cookies' on the user's device.[35] These cookies are saved by the user's web browser, and are used to identify the website user as they browse the website

---

[34] *Lurking Beneath the Surface, supra* note 32.

[35] *What is a web browser?*, MOZILLA, https://www.mozilla.org/en-US/firefox/browsers/what-is-a-browser/ (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

or on subsequent visits to the site.[36] For example, in a more innocuous use case, a cookie may allow the website to remember a user's name and password, language settings, or shopping cart contents.[37]

66. When a Google or Microsoft user logs onto their account, their web browser records a tracking cookie.[38] This cookie includes a specific line of code that links the web browser to the user's Google or Microsoft account, respectively.[39]

67. The Tracking Tool Providers' Pixels use cookies but operate differently than a cookie. Rather than directing the browser to save a file on the user's device, the Pixels acquire information from the browser without notifying the user. The information can include details about the user, his or her interactions with the website, and information about the user's environment (*e.g.,* type of device, type of browser, and sometimes even the physical location of the device), all relayed contemporaneously as the website user navigates the website.

68. Simultaneously, the Pixels, like those installed on the Website, request identifying information from any Google or Microsoft cookies previously installed on the user's web browser.

69. The Pixels then combine the data received from the browser with the data acquired from the cookie, and instructs the web browser to transmit the information back to Google and Microsoft. As a result, Google and Microsoft can link all of the user information collected by their Pixels to the user's identity, via the user's Google or Microsoft profile. Thus, even if a user never actually logs into a website or fills out a form, the website, along with Google, can know the user's identity.

---

[36] *Id.*
[37] *Id.*
[38] Cyphers & Gebhart, *supra* note 18.
[39] *Id.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

70. A remarkable number of Americans possess a Google or Microsoft account. Just one of Google's many products, its Gmail e-mail client, is used by over one-third of Americans.[40] Additionally, approximately 230 million Americans use Microsoft's Windows operating system.[41] When these users visit a website with Google or Microsoft's Pixels installed, like Defendant's Website, any information collected by the Pixels can be linked to the user's identity through the Google or Microsoft cookies installed on the user's web browser.

71. However, it is not only accountholders that are at risk of having Pixel-collected website data linked to their identities. Rather, the Tracking Tool Providers utilize sophisticated data tracking methods to identify even those few users who do not have a Google or Microsoft account.

72. The Tracking Tool Providers' Pixels, like those on the Website, can also acquire information about the user's device and browser, such as their screen resolution, time zone setting, browser software type and version, operating system type and version, language setting, and IP address.

73. An internet user's combination of such device and browser characteristics, commonly referred to as their "browser fingerprint," is "often unique."[42] By tracking this browser fingerprint, the Tracking Tool Providers are able to compile a user's activity across the internet.[43] And, as the Tracking Tool Providers continuously compile user data over time, their understanding of the user's browser

---

[40] *See* Harsha Kiran, *49 Gmail Statistics To Show How Big It Is In 2024*, TECHJURY (Jan. 3, 2024), https://techjury.net/blog/gmail-statistics/ (last visited May 1, 2026) ("Gmail accounts for 130.9 million of the total email users in the US"). The United States population is approximately 337.4 million. *See* UNITED STATES CENSUS BUREAU, https://www.census.gov/popclock/ (last visited May 1, 2026).

[41] Medhi Rizvi, *How Many People Use Windows Worldwide*, TECH SEARCHERS (Apr. 15, 2025), https://techsearchers.com/worldwide-windows-user/ (last visited May 1, 2026).

[42] Cyphers & Gebhart, *supra* note 18.

[43] *Id.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

fingerprint becomes more sophisticated such that it needs only to collect a single piece of identifying information to identify the user linked to a browser fingerprint.

**iv. Defendant Disclosed Plaintiffs' and Class Members' Children's Sensitive Health Information to the Tracking Tool Providers.**

74. To schedule a medical appointment with Defendant for their children, Plaintiffs and Class Members utilized the Website.

75. Unbeknownst to Plaintiffs and Class Members, Defendant intentionally configured the Tracking Tools installed on the Website to capture and transmit their children's Sensitive Health Information that they communicated to Defendant while scheduling their appointments to third parties, including the Tracking Tool Providers.

76. The following screenshots ("Figures 1-6") depict the network transmissions made by the Google Tracking Tools installed on the Website as users navigate the Website. As Figures 1-6 show, when patients seek treatment, log into their patient portal, and pay their bill through the Website, the Sensitive Health Information requested and contemporaneously transmitted to Google by the Tracking Tools installed on the Website include the fact that the user is a patient of Seattle Children's, the specific search terms (name and/or specialty) the user inputs to the Website to find a doctor, and the fact that the user is paying their bill to Seattle Children's.

77. Further, the information that was transmitted to Google was accompanied by specific lines of code linking the Sensitive Health Information provided by Plaintiffs to their identities. The following screenshots show that the Google Pixel on the Website transmitted the identifier numbers attached to Google's 'cid,' cookies, which identify the user's Google account, along with other information that is commonly used to create a browser fingerprint, such as the user's language selection, screen resolution, IP address, web browser software and version number, and operating system and version number.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711




*Figure 1. Screenshot depicting network traffic from the Website which shows information transmitted to Google when Website users search for a specific doctor by name and by specialty.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Headers | **Payload** | Preview | Response | Initiator | Timing

▼ Query String Parameters    View source    View URL-encoded

| | |
|---|---|
| v | 2 |
| tid | G-WJEGRQ19VB |
| gtm | 45je6411v888080471z86702789za20gzb6702789zd6702789 |
| _p | 1775172308517 |
| gcs | G100 |
| gcd | 13q3q3q3q5l1 |
| npa | 1 |
| dma_cps | - |
| dma | 0 |
| gdid | dOThhZD |
| cid | 1244861449.1775172309 |
| ul | en-us |
| sr | 2560x1440 |
| ir | 1 |
| uaa | x86 |
| uab | 64 |
| uafvl | Chromium;146.0.7680.154\|Not-A.Brand;24.0.0.0\|Microsoft%20Edge;146.0.3856.72 |
| uamb | 0 |
| uam | |
| uap | Windows |
| uapv | 19.0.0 |
| uaw | 0 |
| are | 1 |
| frm | 0 |
| pscdl | denied |
| _prs | ok |
| _eu | EAAAAGA |
| _s | 2 |
| tag_exp | 0~115938465~115938468~116991816~117384405 |
| sid | 1775172308 |
| sct | 1 |
| seg | 0 |
| dl | https://www.seattlechildrens.org/conditions/cystic-fibrosis/ |
| dr | https://www.seattlechildrens.org/ |
| dt | Cystic Fibrosis - Seattle Children's |
| _tu | CA |
| en | click_to_call |
| _c | 1 |
| ep.event_action | tel:206-987-2024 |
| ep.event_label | 206-987-2024 |
| ep.event_page | https://www.seattlechildrens.org/conditions/cystic-fibrosis/ |
| _et | 823 |
| tfd | 1472 |



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711






**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Headers | **Payload** | Preview | Response | Initiator | Timing

▼ Query String Parameters  View source  View URL-encoded

| | |
|---|---|
| v | 2 |
| tid | G-WJEGRQ19VB |
| gtm | 45je6411v888080471z86702789za20gzb6702789zd6702789 |
| _p | 1775171968042 |
| gcs | G100 |
| gcd | 13q3q3q3q5l1 |
| npa | 1 |
| dma_cps | - |
| dma | 0 |
| gdid | dOThhZD |
| cid | 544717367.1775171968 |
| ul | en-us |
| sr | 2560x1440 |
| ir | 1 |
| uaa | x86 |
| uab | 64 |
| uafvl | Chromium;146.0.7680.154\|Not-A.Brand;24.0.0.0\|Microsoft%20Edge;146.0.3856.72 |
| uamb | 0 |
| uam | |
| uap | Windows |
| uapv | 19.0.0 |
| uaw | 0 |
| are | 1 |
| frm | 0 |
| pscdl | denied |
| _eu | EAAAAGA |
| _s | 8 |
| tag_exp | 0~115938466~115938469~116991817 |
| sid | 1775171968 |
| sct | 1 |
| seg | 0 |
| dl | https://www.seattlechildrens.org/conditions/leukemia-all/ |
| dr | https://www.seattlechildrens.org/ |
| dt | Acute Lymphoblastic Leukemia – Seattle Children's Hospital |
| _tu | CA |
| en | cta_data_analytics |
| ep.event_label | Get a Second Opinion |
| ep.event_page | https://www.seattlechildrens.org/conditions/leukemia-all/ |
| ep.event_action | https://www.seattlechildrens.org/clinics/cancer/contact-locations/#second |
| ep.event_data_role | (not set) |
| _et | 584 |
| tfd | 104493 |

*Figures 2-4. Screenshots depicting network traffic from the Website which shows information transmitted to Google when Website users contact Seattle Children's through the Website for treatment.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

```
        Protocol: https
            Host: www.google-analytics.com
            Path: /g/collect

PARAMETERS
               v: 2
             tid: G-WJEGRQ19VB
             gtm: 45je6411v888080471z86702789za20gzb6702789zd6702789
              _p: 1775172688759
             gcs: G100
             gcd: 13q3q3q3q5l1
             npa: 1
         dma_cps: -
             dma: 0
            gdid: dOThhZD
             cid: 1095622144.1775172689
              ul: en-us
              sr: 2560x1440
              ir: 1
             uaa: x86
             uab: 64
           uafvl: Chromium;146.0.7680.154|Not-A.Brand;24.0.0.0|Microsoft%20Edge;146.0.3856.72
            uamb: 0
             uam:
             uap: Windows
            uapv: 19.0.0
             uaw: 0
             are: 1
             frm: 0
           pscdl: denied
             _eu: EAAAAGA
              _s: 2
         tag_exp: 0~115616986~115938466~115938469~116991817~117884344~118128922~118328143
             sid: 1775172688
             sct: 1
             seg: 0
              dl: https://www.seattlechildrens.org/patients-families/mychart/
              dr: https://www.seattlechildrens.org/
              dt: Seattle Children's MyChart
             _tu: CA
              en: cta_data_analytics
  ep.event_label: Sign In
   ep.event_page: https://www.seattlechildrens.org/patients-families/mychart/
 ep.event_action: https://mychart.seattlechildrens.org/
ep.event_data_role: (not set)
             _et: 5893
             tfd: 6723
```


*Figure 5. Screenshot depicting network traffic from the Website which shows information transmitted to Google when Website users sign into Defendant's patient portal through the Website.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

```
?guestpay&ep.event_data_role=(not%20set)&_et=77&tfd=43835

          Protocol: https
              Host: www.google-analytics.com
              Path: /g/collect

PARAMETERS
                 v: 2
               tid: G-WJEGRQ19VB
               gtm: 45je6411v888080471z86702789za20gzb6702789zd6702789
                _p: 1775170694811
               gcs: G100
               gcd: 13q3q3q3q5l1
               npa: 1
           dma_cps: -
               dma: 0
              gdid: dOThhZD
               cid: 1225437136.1775170695
                ul: en-us
                sr: 2560x1440
                ir: 1
               uaa: x86
               uab: 64
             uafvl: Chromium;146.0.7680.154|Not-A.Brand;24.0.0.0|Microsoft%20Edge;146.0.3856.72
              uamb: 0
               uam:
               uap: Windows
              uapv: 19.0.0
               uaw: 0
               are: 1
               frm: 0
             pscdl: denied
               _eu: EAAAAGA
                _s: 2
           tag_exp: 0~115616985~115938465~115938468~116991817~117384405
               sid: 1775170695
               sct: 1
               seg: 0
                dl: https://www.seattlechildrens.org/clinics/paying-for-care/pay-my-bill/
                dr: https://www.seattlechildrens.org/
                dt: Pay My Bill at Seattle Children's
               _tu: CA
                en: cta data analytics
    ep.event_label: Pay My Bill
     ep.event_page: https://www.seattlechildrens.org/clinics/paying-for-care/pay-my-bill/
   ep.event_action: https://mychart.seattlechildrens.org/MyChart/billing/guestpay
ep.event_data_role: (not set)
               _et: 77
               tfd: 43835
```


*Figure 6. Screenshot depicting network traffic from the Website which shows information transmitted to Google when Website users navigate the Website to pay their bill.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

78. Worse, as demonstrated by Figures 1-6, the network traffic shows that the user denied the use of non-essential tracking technologies through Defendant's Consent Banner. As the screenshots show, and as highlighted by Figure 7 below, the Tracking Tools still transmit Sensitive Health Information to Google despite the patient's affirmative choice not to have their Sensitive Health Information tracked and disclosed to third parties.

| | |
|---|---|
| uap | Windows |
| uapv | 19.0.0 |
| uaw | 0 |
| are | 1 |
| frm | 0 |
| pscdl | denied |
| _eu | EAAAAGA |
| _s | 8 |
| tag_exp | 0~115938466~115938469~116991817 |
| sid | 1775171968 |

*Figure 7. Screenshot depicting network traffic from the Website which shows the Website user rejected the use of non-essential tracking technologies, like the Tracking Tools.*

79. Similarly, the following screenshot ("Figure 8") depicts the network transmissions made by the Microsoft Tracking Tools installed on the Website as users navigate the Website. As Figure 8 shows, when patients seek treatment for a specific condition, the Sensitive Health Information requested and contemporaneously transmitted to Microsoft by the Tracking Tools installed on the Website includes the specific condition the patient is seeking treatment for.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

```
        "baseData": {
          "id": "|fc8a65974b2142ba922b6bf850ec9f3d.e60f6c71e5fd4ab7.",
          "ver": 2,
          "name": "POST /cdn-cgi/rum?",
          "resultCode": "204",
          "duration": "00:00:00.040",
          "success": true,
          "data": "POST /cdn-cgi/rum?",
          "target": "www.seattlechildrens.org",
          "type": "Ajax",
          "properties": {
            "HttpMethod": "POST"
          },
          "measurements": {}
        }
      }
    },
    {
      "time": "2026-04-02T23:23:19.457Z",
      "iKey": "3c82cf95-02da-413e-9054-702799ec7299",
      "name": "Microsoft.ApplicationInsights.3c82cf9502da413e9054702799ec7299.Pageview",
      "tags": {
        "ai.user.id": "RGIDLJyoESOEF1lvI9zdsu",
        "ai.session.id": "V7heGMJQ65ifAYJHMo4MPi",
        "ai.device.id": "browser",
        "ai.device.type": "Browser",
        "ai.operation.name": "/conditions/choledochal-cyst/",
        "ai.operation.id": "fc8a65974b2142ba922b6bf850ec9f3d",
        "ai.internal.sdkVersion": "javascript:2.8.18",
        "ai.internal.snippet": "5",
        "ai.internal.sdkSrc": "cdn1"
      },
      "data": {
        "baseType": "PageviewData",
        "baseData": {
          "ver": 2,
          "name": "Choledochal Cyst - Seattle Children's",
          "url": "https://www.seattlechildrens.org/conditions/choledochal-cyst/",
          "duration": "00:00:00.367",
          "properties": {
            "refUri": "https://www.seattlechildrens.org/"
          },
          "measurements": {},
          "id": "fc8a65974b2142ba922b6bf850ec9f3d"
        }
      }
    },
```


*Figure 8. Screenshot depicting network traffic from the Website which shows information transmitted to Microsoft when Website users utilize the Website to seek treatment.*



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

80. Lastly, the following screenshots ("Figures 8-9") depict the network transmissions made by the Tealium Tracking Tools installed on the Website as users navigate the Website. As Figures 8-9 show, when patients seek treatment for a specific condition, the Sensitive Health Information requested and contemporaneously transmitted to Tealium by the Tracking Tools installed on the Website include the specific condition the patient is seeking treatment for.



"data": {
"tealium_event": "generic_block",
"event_category": "generic_block",
"event_name": "block_click",
"event_action": "https://www.seattlechildrens.org/printpdf/specialtiesprofilelocation/print/3a5e4d2c-b1e4-4276-bcbd-d66d972fcf18/Apheresis/false",
"event_label": "Download all providers in  Apheresis",
"event_page": "https://www.seattlechildrens.org/directory-search/?fn=John&ln=Jones&sp=Apheresis",
"block_type": "DirectoryListingBlockData",
"block_name": "Directory Listing",
"block_id": "20402",
"link_text": "Download all providers in  Apheresis",
"link_url": "https://www.seattlechildrens.org/printpdf/specialtiesprofilelocation/print/3a5e4d2c-b1e4-4276-bcbd-d66d972fcf18/Apheresis/false",
"link_type": null,
"link_btn": null,
"page_url": "https://www.seattlechildrens.org/directory-search/?fn=John&ln=Jones&sp=Apheresis",
"page_path": "/directory-search/",
"engagement_time_msec": "1153789",
"timestamp_micros": "1775171892246000",
"block_block_type": "DirectoryListingBlockData",
"block_block_name": "Directory Listing",
"block_block_id": "20402",
"cp.utag_main__sn": "1",
"cp.utag_main_ses_id": "1775170032721",
"cp.utag_main_session_start_time": "1775170032725",
"cp.utag_main_tealium_session_id": "1775170032721",
"cp.utag_main_v_id": "019d5061148b001ec4c2fd410b990507d002107500fc0",
"cp.utag_main_dc_visit": "1",
"cp.utag_main_dc_region": "us-west-2",
"cp.utag_main_session_engaged": "true",
"cp.utag_main__ss": "0",
"cp.utag_main__pn": "14",
"cp.utag_main__se": "31",
"cp.utag_main__st": "1775173692248",
"cp.utag_main_dc_event": "30",
"cp.utag_main_page_view_count": "25",
"cp.ai_user": "RGIDLJyoESOEF1lvI9zdsu|2026-04-02T22:47:11.683Z",
"cp.anon_id_c": "8583921698157627-1775170032",
"cp.traffic_type_c": "direct",
"cp.EPiStateMarker": "true",
"cp.EPiUrlReferrerKey": "https://www.seattlechildrens.org/",
"cp.EPiStartUrlKey": "https://www.seattlechildrens.org/patients-families/clinic-visit/",
"cp.ai_session": "V7heGMJQ65ifAYJHMo4MPi|1775170032065|1775170809053",
"cp._fbp": "fb.1.1775171892000.7553545259263360",
"qp.fn": "John",
"qp.ln": "Jones",
"qp.sp": "Apheresis",
"meta.viewport": "width=device-width, initial-scale=1",
"meta.msvalidate.01": "C8DCF0830F14F4ABA678C3ED86E25B93",
"meta.description": "Your search results for Providers at Seattle Children's Hospital.",
"meta.og:description": "Your search results for Providers at Seattle Children's Hospital.",
"meta.twitter:description": "Your search results for Providers at Seattle Children's Hospital.",
"meta.og:title": "Physician Finder Search Results",
"meta.twitter:title": "Physician Finder Search Results",
"meta.og:url": "https://www.seattlechildrens.org/directory-search/",
"meta.twitter:site": "@seattlechildren",




**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

```
"data": {
  "link_text": "206-987-2106",
  "page_url": "https://www.seattlechildrens.org/conditions/leukemia-all/",
  "link_url": "206-987-2106",
  "event_category": "communication",
  "event_name": "phone",
  "tealium_event": "phone",
  "cp.utag_main__sn": "1",
  "cp.utag_main_ses_id": "1775170032721",
  "cp.utag_main_session_start_time": "1775170032725",
  "cp.utag_main_tealium_session_id": "1775170032721",
  "cp.utag_main_v_id": "019d5061148b001ec4c2fd410b990507d002107500fc0",
  "cp.utag_main_dc_visit": "1",
  "cp.utag_main_dc_region": "us-west-2",
  "cp.utag_main_session_engaged": "true",
  "cp.utag_main__ss": "0",
  "cp.utag_main__pn": "16",
  "cp.utag_main_page_view_count": "29",
  "cp.utag_main__se": "36",
  "cp.utag_main__st": "1775173774897",
  "cp.utag_main_dc_event": "35",
  "cp.ai_user": "RGIDLJyoESOEF1lvI9zdsu|2026-04-02T22:47:11.683Z",
  "cp.anon_id_c": "8583921698157627-1775170032",
  "cp.traffic_type_c": "direct",
  "cp.EPiStateMarker": "true",
  "cp.EPiUrlReferrerKey": "https://www.seattlechildrens.org/",
  "cp.EPiStartUrlKey": "https://www.seattlechildrens.org/patients-families/clinic-visit/",
  "cp.ai_session": "V7heGMJQ65ifAYJHMo4MPi|1775170032065|1775171968549",
  "cp._fbp": "fb.1.1775171974000.2965015144575205",
  "meta.viewport": "width=device-width, initial-scale=1",
  "meta.msvalidate.01": "C8DCF0830F14F4ABA678C3ED86E25B93",
  "meta.description": "Learn about treatment options for acute lymphoblastic leukemia (ALL), cancer of the blood and bone marrow. Seattle Children’s provides the most advanced diagnostics and treatments.",
  "meta.og:description": "Learn about treatment options for acute lymphoblastic leukemia (ALL), cancer of the blood and bone marrow. Seattle Children’s provides the most advanced diagnostics and treatments.",
  "meta.twitter:description": "Learn about treatment options for acute lymphoblastic leukemia (ALL), cancer of the blood and bone marrow. Seattle Children’s provides the most advanced diagnostics and treatments.",
  "meta.og:title": "Acute Lymphoblastic Leukemia – Seattle Children’s Hospital",
  "meta.twitter:title": "Acute Lymphoblastic Leukemia – Seattle Children’s Hospital",
  "meta.og:url": "https://www.seattlechildrens.org/conditions/leukemia-all/",
  "meta.twitter:site": "@seattlechildren",
  "meta.og:site_name": "Seattle Children’s Hospital",
  "meta.twitter:card": "summary_large_image",
  "meta.title": "Acute Lymphoblastic Leukemia – Seattle Children’s Hospital",
  "meta.body": "Learn about treatment options for acute lymphoblastic leukemia (ALL), cancer of the blood and bone marrow. Seattle Children’s provides the most advanced diagnostics and treatments.",
  "meta.categories": "39",
  "meta.start": "2018-04-04T15:10:00.0000000-07:00",
  "meta.stop": "9999-12-31T23:59:59.9999999",
  "meta.displayDate": "2018-04-04T15:10:00.0000000-07:00",
  "meta.ctype": "GeneralContentPageData",
  "meta.clink": "3556",
  "meta.ancestor": "3556",
  "dom.referrer": "https://www.seattlechildrens.org/",
  "dom.title": "Acute Lymphoblastic Leukemia – Seattle Children’s Hospital",
```


*Figures 8-9. Screenshots depicting network traffic from the Website which shows information transmitted to Tealium when Website users utilize the Website to seek treatment.*

81. In their default state, the Tracking Tool Providers’ Pixels record and transmit only “automatic events,” consisting largely of routine user behavior, such as clicking a link, clicking on an advertisement, or viewing a webpage.[44] Defendant purposely configured the Pixels on the Website to collect and transmit additional user data, including the fact Website users’ search terms to find a doctor, the specific condition they are seeking treatment for, and that they are a patient of Seattle Children’s signing into their patient portal and paying their bill.

---

[44] *See, e.g.*, *Automatically Collected Events*, GOOGLE ANALYTICS HELP, https://support.google.com/analytics/answer/9234069 (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

### B. DEFENDANT DISCLOSED PLAINTIFFS' AND CLASS MEMBERS' CHILDREN'S SENSITIVE HEALTH INFORMATION TO THIRD PARTIES WITHOUT THEIR KNOWLEDGE OR CONSENT

#### i. Defendant does not honor Plaintiffs' and Class Members' choice not to consent to the disclosure of their Sensitive Health Information

82. When a Website user navigates to Defendant's Website, they are presented with the following Consent Banner:




*Figure 10. Screenshot depicting Defendant's Consent Banner, seemingly offering Website users the choice to consent or reject the use of non-essential tracking technologies, like the Tracking Tools*

83. But, as shown in Figures 1-9, *supra*, the Tracking Tools continue to collect and transmit patients' Sensitive Health Information to the Tracking Tool Providers regardless of the choice they make through the Consent Banner.

84. Defendant breached Plaintiffs', Minor Plaintiffs', Class Members', and Class Members' children's right to privacy by unlawfully disclosing their Sensitive Health Information to third parties, including the Tracking Tool Providers. Specifically, Plaintiffs and Class Members had a



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

reasonable expectation of privacy (based on Defendant's own representations to Plaintiffs and the Class that Defendant would not disclose their Sensitive Health Information to third parties absent their consent).

85. By engaging in this improper sharing of information without Plaintiffs' and Class Members' consent, and in contravention to Plaintiffs' and Class Members' affirmative choices not to have their information shared, Defendant violated its own Privacy Policy and breached Plaintiffs' and Class Members' right to privacy and unlawfully disclosed their children's Sensitive Health Information.

86. Despite Plaintiffs' and Class Members' lack of meaningful consent, Defendant allowed third parties such as the Tracking Tool Providers to intercept Plaintiffs' and Class Members' children's Sensitive Health Information and use it for advertising purposes.

**ii. The Tracking Tools Used by Defendant Were Imperceptible to Plaintiffs and Class Members**

87. The Tracking Tools installed on the Website were invisible to Plaintiffs and Class Members. Without analyzing the network information transmitted by the Website through examination of its source code or the use of sophisticated web developer tools, there was no way for a Website user to discover the presence of the Tracking Tools. Nor would the Website users who explicitly rejected the use of such Tracking Tools expect the ongoing presence of the Tracking Tools. As a result, typical internet users, such as Plaintiffs and Class Members, were unable to detect the Tracking Tools on the Website.

88. Plaintiffs and Class Members did not know that their children's Sensitive Health Information was being collected and transmitted to an unauthorized third party.

89. Because Plaintiffs and Class Members were not aware of the Tracking Tools on the Website that collected and transmitted their children's Sensitive Health Information the Tracking Tool



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Providers, and because any consent obtained through the Consent Banner was illusory, Plaintiffs and Class Members could not and did not consent to Defendant's conduct.

### C. DEFENDANT WAS ENRICHED BY ITS DISCLOSURE OF PLAINTIFFS' AND CLASS MEMBERS' CHILDREN'S SENSITIVE HEALTH INFORMATION TO THIRD PARTIES

#### i. Defendant Received Material Benefits in Exchange for Minor Plaintiffs' Sensitive Health Information

90. As explained, *supra*, users of the Tracking Tool Providers' Business Tools, like Defendant, receive access to advertising and marketing analytics services in exchange for installing the Tracking Tools on its website.

91. Upon information and belief, Defendant, as users of the Tracking Tool Providers' Business Tools, received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms in exchange for allowing the Tracking Tool Providers to collect Plaintiffs' and Class Members' children's Sensitive Health Information.

#### ii. The Minor Plaintiffs' Sensitive Health Information Had Financial Value

92. Moreover, Plaintiffs' and Class Members' children's Sensitive Health Information has value and Defendant's disclosure and interception of that Sensitive Health Information harmed the Minor Plaintiffs and the Class.

93. According to the annual reports of Facebook, another major online advertising proprietor, the value it derives from user data has continuously risen. "In 2013, the average American's data was worth about $19 per year in advertising sales to Facebook, according to its financial statements. In 2020, [it] was worth $164 per year."[45]

---

[45] Geoffrey A. Fowler, *There's no escape from Facebook, even if you don't use it*, THE WASHINGTON POST (Aug. 29, 2021), https://www.washingtonpost.com/technology/2021/ 08/29/facebook-privacy-monopoly/ (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

94. Conservative estimates suggest that in 2018, Internet companies earned $202 per American user from mining and selling data. That figure is only due to keep increasing; estimates for 2022 are as high as $434 per user, for a total of more than $200 billion industry wide.

95. Moreover, health information is particularly valuable. Healthcare data brokers charge up to $125 per clinical data record, with electronic healthcare databases selling for up to $500,000.[46] In fact, compared to other types of personal data, healthcare data records are by far the most valuable, fetching prices of up to $250 per record on the black market, compared to $5.40 for the next highest value record (a payment card).[47]

96. Several companies have products through which they pay consumers for a license to track certain information. Indeed, Nielsen, UpVoice, HoneyGain, and SavvyConnect are all companies, in addition to Google, that pay for browsing history information.

97. The unauthorized disclosure of the Minor Plaintiffs' and Class Members' children's private and Sensitive Health Information has diminished the value of that information, resulting in harm to the Minor Plaintiffs and Class Members' children.

## D. DEFENDANT'S USE OF THE TRACKING TOOLS VIOLATES HIPAA

98. The disclosure of Minor Plaintiffs' and Class Members' children's Sensitive Health Information via the Pixels contravened the letter and spirit of HIPAA's "Standards for Privacy of Individually Identifiable Health Information" (also known as the "Privacy Rule") which governs how health care providers must safeguard and protect Private Information.[48]

---

[46] *The Value of Data*, TRUSTWAVE (2017), *available online at*: https://www.infopoint-security.de/media/TrustwaveValue_of_Data_Report_Final_PDF.pdf.

[47] Todd Zigrang & Jessica Bailey-Wheaton, *Valuing Healthcare Data*, THE VALUE EXAMINER (2023), *available online at*: https://www.healthcapital.com/researchmaterialdocuments/ publishedarticles/ Valuing%20Healthcare%20Data.pdf

[48] *The HIPAA Privacy Rule*, https://www.hhs.gov/hipaa/for-professionals/privacy/index.html (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

99. The HIPAA Privacy Rule sets forth policies to protect all Individually Identifiable Health Information ("IIHI") and Personal Health Information ("PHI") that is held or transmitted by a covered entity such as Defendant.

100. IIHI is defined as "a subset of health information, including demographic information collected from an individual" that is: (1) "created or received by a health care provider, health plan, employer, or health care clearinghouse"; (2) "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual"; and (3) either (a) "identifies the individual" or (b) "[w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103.

101. The Privacy Rule broadly defines PHI as IIHI that is "transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium." 45 C.F.R. § 160.103.

102. There are 18 HIPAA Identifiers that are considered personally identifiable information because this information can be used to identify, contact, or locate a specific person or can be used with other sources (such as a person's Google account) to identify a single individual. When IIHI is used in conjunction with one's physical or mental health or condition, health care, and/or one's payment for that health care, it becomes Personal Health Information ("PHI").

103. Additionally, information revealing that an individual is receiving medical service or treatment is PHI. In its 2012 Guidance regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act Privacy Rule, the U.S. Department of Health and Human Services (HHS) instructed health care providers that, while identifying information alone is not necessarily PHI if it is part of a public source



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

uncoupled from health data (e.g., a phone book), "[i]f such information was listed with health condition, health care provision, or payment data, such as an indication that the individual was treated at a certain clinic, then this information would be PHI."

104. HHS has repeatedly instructed covered entities that patient status is protected by the HIPAA Privacy Rule:

a. "The sale of a patient list to a marketing firm" is not permitted under HIPAA. 65 Fed. Reg. 82717 (Dec. 28, 2000);

b. "A covered entity must have the individual's prior written authorization to use or disclose protected health information for marketing communications," which includes disclosure of mere patient status through a patient list. 67 Fed. Reg. 53186 (Aug. 14, 2002); and

c. It would be a HIPAA violation "if a covered entity impermissibly disclosed a list of patient names, addresses, and hospital identification numbers." 78 Fed. Reg. 5642 (Jan. 25, 2013).

105. While healthcare entities regulated under HIPAA may use third-party tracking tools, such as the Tracking Tools, they can do so only in a very limited way, i.e., to perform analysis on data key to their operations.

106. When the information that a regulated entity collects through technologies or discloses to third parties (e.g., tracking technology vendors like Google) includes PHI, the protections under the HIPAA Privacy Rule apply.[49]

107. Put simply, HIPAA covered entities such as Defendant are not permitted to use tracking technology tools (like Pixels) in a way that exposes an individual's PHI to any third party without that individual's express and informed consent.

108. In a joint letter to approximately 130 hospital systems and telehealth provides, the

[49] *See Letter regarding Use of Online Tracking Technologies*, FEDERAL TRADE COMMISSION, available at: https://www.ftc.gov/system/files/ftc_gov/pdf/FTC-OCR-Letter-Third-Party-Trackers-07-20-2023.pdf (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Office for Civil Rights (OCR) at the HHS and Federal Trade Commission (FTC) acknowledged that tracking technology tools "gather identifiable information about users as they interact with a website or mobile app, often in ways which are not avoidable by and largely unknown to users."[50] Disclosures to third parties by these tracking tools can "reveal sensitive information including health conditions, diagnoses, medications, medical treatments, frequency of visits to health care professionals, where an individual seeks medical treatment, and more."[51]

109. The HHS and FTC warn that the "[i]mpermissible disclosures of an individual's [PHI] to third parties may result in a wide range of harms to an individual or others," including "identity theft, financial loss, discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others."[52]

110. Under Federal Law, a healthcare provider may not disclose personally identifiable, non-public medical information about a patient, a potential patient, or household member of a patient for marketing purposes without the patients' express written authorization.[53]

111. Consistent with this restriction, the HHS has issued marketing guidance that provides:

> With limited exceptions, the [Privacy] Rule requires an individual's written authorization before a use or disclosure of his or her protected health information can be made for marketing . . . . Simply put, a covered entity may not sell protected health information to a business associate or any other third party for that party's own purposes. Moreover, covered entities may not sell lists of patients or enrollees to third parties without obtaining authorization from each person on the list.[54]

---

[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502; 164.508(a)(3), 164.514(b)(2)(i).
[54] *Marketing*, HHS, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/marketing/index.html (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

112. The HIPAA Privacy Rule further requires any "covered entity"—which includes Defendant—to maintain appropriate safeguards to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures that may be made of protected health information without authorization. 45 C.F.R. §§ 160.103, 164.502.

113. In contravention of HIPAA, Defendant failed to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information[,]" 45 C.F.R. § 164.306(c), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

114. Defendant failed to comply with other HIPAA safeguard regulations as follows:

i. Failing to ensure the confidentiality and integrity of electronic PHI that Defendant created, received, maintained, and transmitted in violation of 45 C.F.R. § 164.306(a)(1);

ii. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. section 164.308(a)(1);

iii. Failing to identify and respond to suspected or known security incidents and mitigate harmful effects of security incidents known to Defendant in violation of 45 C.F.R. § 164.308(a)(6)(ii);

iv. Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

v. Failing to protect against reasonably anticipated uses or disclosures of electronic PHI not permitted under the privacy rules pertaining to individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

vi. Failing to effectively train their workforces (including independent contractors) on the policies and procedures for PHI as necessary and appropriate to carry out job functions while maintaining security of PHI beyond using imitation phishing email software in violation of 45 C.F.R. §§ 164.530(b) and 164.308(a)(5); and



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

vii. Failing to design, implement, and enforce policies and procedures that would establish physical and administrative safeguards to reasonably safeguard PHI in violation of 45 C.F.R. § 164.530(c).

115. Defendant violated the Privacy Rule by providing patient information to third parties without first obtaining express consent from Plaintiffs and Class Members.

**E. DEFENDANT'S USE OF THE TRACKING TOOLS VIOLATES THE WASHINGTON MY HEALTH MY DATA ACT ("MHMDA")**

116. The Washington legislature enacted the MHMDA in 2023 to expand protections for privacy of all medical information, even that not protected under the federal Health Insurance Portability and Accountability Act ("HIPAA"). Specifically, the legislature states that:

> The legislature finds that the people of Washington regard their privacy as a fundamental right and an essential element of their individual freedom. Washington's Constitution explicitly provides the right to privacy. Fundamental privacy rights have long been and continue to be integral to protecting Washingtonians and to safeguarding our democratic republic…
>
> Information related to an individual's health conditions or attempts to obtain health care services is among the most personal and sensitive categories of data collected. Washingtonians expect that their health data is protected under laws like the health information portability and accountability act (HIPAA). However, HIPAA only covers health data collected by specific health care entities, including most health care providers. Health data collected by noncovered entities, including certain apps and websites, are not afforded the same protections. [The My Health My Data Act] works to close the gap between consumer knowledge and industry practice by providing stronger privacy protections for all Washington consumers' health data.

Wash. Rev. Code Ann. § 19.373.005.

117. The MHMDA protects against the unauthorized disclosure of "consumer health data," defined as "personal information that is linked or reasonably linkable to a consumer and that identifies the consumer's past, present, or future physical or mental health status." Wash. Rev. Code Ann. § 19.373.010.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

118. Under the MHMDA, an entity may not collect any consumer health data without obtaining consent from the consumer for "such collection for a specified purpose[.]" Wash. Rev. Code Ann. § 19.373.030(a). To comply with this requirement, the entity must maintain a "consumer health data privacy policy that clearly and conspicuously discloses" the categories and source of any consumer health data collected, as well as the identity of any third parties with which such health data is being shared. Wash. Rev. Code Ann. § 19.373.020(1)(a). The policy must also document the procedure through which the consumer may opt out of any data collection. *Id.*; *see also* Wash. Rev. Code Ann. § 19.373.040 (documenting right of consumer to opt out of data collection). A violation of the MHMDA also constitutes a violation of the Washington Consumer Protection Act [Wash. Rev. Code Ann. § 19.86]. Wash. Rev. Code Ann. § 19.373.090.

119. On their Website, Defendant does not disclose their collection and disclosure of patients' Sensitive Health Information through the Tracking Tools. In fact, the Website's Consent Banner explicitly promises users that Defendant will not share Sensitive Health Information without their explicit consent. *See* Figure 10, *supra*.

120. Accordingly, Defendant's use of the Tracking Tools violates the MHMDA.

**F. MINOR PLAINTIFFS' AND CLASS MEMBERS' CHILDREN'S REASONABLE EXPECTATION OF PRIVACY**

121. At all times when Plaintiffs and Class Members provided their children's Sensitive Health Information to Defendant, they each had a reasonable expectation that the information would remain confidential and that Defendant would not share the Sensitive Health Information with third parties for a commercial purpose, unrelated to providing them with healthcare, without their consent.

122. Privacy polls and studies show that the overwhelming majority of Americans consider obtaining an individual's affirmative informed consent before a company collects and shares that individual's data to be one of the most important privacy rights.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

123. For example, a recent Consumer Reports study shows that 92-percent of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing consumer data, and the same percentage believe those companies and websites should be required to provide consumers with a complete list of the data that is collected about them.[55]

124. Moreover, Americans are particularly interested in the safety of their health information. Over 50-percent of Americans believe that "medical-records privacy is not sufficiently protected today by law and organizational practices."[56] And, in a study performed by the National Institutes of Health ("NIH"), nearly 80-percent of respondents reported being "very concerned" or "concerned" about the privacy of medical records.[57]

125. These feelings are particularly acute with regards to children's data. In a survey conducted jointly by the Center for Digital Democracy and Common Sense Media, 93-percent of parents agreed that "a federal law that says that online sites and companies need to ask parents' permission before they collect personal information from children under age 13" is a "good idea."[58]

126. Personal data privacy and obtaining consent to share children's Sensitive Health Information are material to Plaintiffs and Class Members.

---

[55] *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety-a3980496907 (last visited May 1, 2026).

[56] *The Value of Data*, TRUSTWAVE (2017), *available online at*: https://www.infopoint-security.de/media/TrustwaveValue_of_Data_Report_Final_PDF.pdf.

[57] Daniel S Gaylin, Adil Moiduddin, Shamis Mohamoud, Katie Lundeen, Jennifer A Kelly, *Public Attitudes about Health Information Technology, and Its Relationship to Health Care Quality, Costs, and Privacy*, HEALTH SERV. RES. (2011), *available online at*: https://pmc.ncbi.nlm.nih.gov/articles/PMC3097409/pdf/hesr0046-0920.pdf.

[58] *Survey on Children and Online Privacy*, CTR. FOR DIGITAL DEMOCRACY & COMMON SENSE MEDIA (2012), *available online at:* https://www.pixalate.com/blog/childrens-online-privacy-harris-poll-recap (last visited May 1, 2026).



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

## V. TOLLING AND ESTOPPEL

127. Any applicable statutes of limitation have been tolled by Defendant's knowing and active concealment of the incorporation of the Tracking Tool Providers' Tracking Tools onto the Website.

128. The Tracking Tools on the Website were and are invisible to the average website visitor.

129. Through no fault or lack of diligence, Plaintiffs and Class Members were deceived and could not reasonably discover Defendant's deception and unlawful conduct.

130. Plaintiffs were ignorant of the information essential to pursue their claims, without any fault or lack of diligence on their part.

131. Defendant had exclusive knowledge that the Website incorporated the Pixels and other Tracking Tools and yet failed to disclose to customers, including Plaintiffs and Class Members, that by utilizing the Website for their children's medical care, and regardless of the choice they make through the Consent Banner, the Minor Plaintiffs' and Class Members' children's Sensitive Health Information would be disclosed or released to unauthorized third parties, including the Tracking Tool Providers.

132. Under the circumstances, Defendant was under a duty to disclose the nature, significance, and consequences of its collection and treatment of its patients' Sensitive Health Information and to honor their choices regarding the same. In fact, to the present, Defendant has not conceded, acknowledged, or otherwise indicated to its patients that they have disclosed or released their children's Sensitive Health Information to unauthorized third parties. Accordingly, Defendant is estopped from relying on any statute of limitations.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

133. Moreover, all applicable statutes of limitation have also been tolled pursuant to the discovery rule.

134. The earliest that Plaintiffs or Class Members, acting with due diligence, could have reasonably discovered Defendant's conduct would have been shortly before the filing of this Complaint.

## VI. CLASS ALLEGATIONS

135. This action is brought by the named Plaintiffs on behalf of the Minor Plaintiffs and on behalf of a proposed Class of all other persons similarly situated under Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

136. The Nationwide Class that Plaintiffs seek to represent is defined as follows:

**The Nationwide Class**

All natural persons who used the Website for their child's or children's medical care, and whose child's or children's Sensitive Health Information was disclosed or transmitted to the Tracking Tool Providers or any other unauthorized third party without their consent.

137. In addition to the claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims on behalf of separate Washington Subclass, which is defined as follows:

**Washington Subclass**

All natural persons residing in the State of Washington who used the Website for their child's or children's medical care, and whose child's or children's Sensitive Health Information was disclosed or transmitted to the Tracking Tool Providers or any other unauthorized third party without their consent.

138. The Nationwide Class and Washington Subclass are collectively referred to herein as the "Class." Excluded from the proposed Class are any claims for personal injury, wrongful death, or other property damage sustained by the Class; Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives,



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

heirs, predecessors, successors, and assigns; and any Judge conducting any proceeding in this action and members of their immediate families.

139. Plaintiffs reserve the right to amend the definitions of the Class or add subclasses if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

140. **Numerosity.** The Class is so numerous that the individual joinder of all members is impracticable. There are at least 10,000 individuals that have been impacted by Defendant's actions. Moreover, the exact number of those impacted is generally ascertainable by appropriate discovery and is in the exclusive control of Defendant.

141. **Commonality.** Common questions of law or fact arising from Defendant's conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to, the following:

a) Whether and to what extent Defendant had a duty to protect the Sensitive Health Information of Minor Plaintiffs and Class Members' children;

b) Whether Defendant had duties not to disclose the Sensitive Health Information of Minor Plaintiffs and Class Members' children to unauthorized third parties;

c) Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their children's Sensitive Health Information would be disclosed to third parties;

d) Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their children's Sensitive Health Information was being disclosed without their consent;

e) Whether Defendant adequately addressed and fixed the practices which permitted the unauthorized disclosure of patients' Sensitive Health Information;

f) Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to keep the Sensitive Health Information belonging to Minor Plaintiffs and Class Members' children free from unauthorized disclosure;



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

g) Whether Defendant violated the statutes asserted as claims in this Complaint;

h) Whether Plaintiffs and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

i) Whether Defendant knowingly omitted material representations with respect to their data security and/or privacy policy practices; and

j) Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Defendant's disclosure of their children's Sensitive Health Information.

142. **Typicality.** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' children's Sensitive Health Information, like that of every other Class Member's child or children, was compromised as a result of Defendant's incorporation and use of the Tracking Tools.

143. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages Plaintiffs have suffered are typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

144. **Predominance**. Defendant has engaged in a common course of conduct toward Plaintiffs' and Class Members' children in that all the Plaintiffs' and Class Members' children's Sensitive Health Information was unlawfully stored and disclosed to unauthorized third parties, including the Tracking Tool Providers, in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

145. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

146. Defendant acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

147. Likewise, particular issues under Fed. R. Civ. P. 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a) Whether Defendant owed a legal duty to Minor Plaintiffs and the Class's children to exercise due care in collecting, storing, and safeguarding their Sensitive Health Information and not disclosing it to unauthorized third parties;

b) Whether Defendant breached a legal duty to Minor Plaintiffs and Class Members' children to exercise due care in collecting, storing, using, and safeguarding their Sensitive Health Information;

c) Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;


**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

d) Whether Defendant adequately and accurately informed Plaintiffs and Class Members that their children's Sensitive Health Information would be disclosed to third parties;

e) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information disclosed to third parties; and

f) Whether Class Members are entitled to actual, consequential, and/or nominal damages and/or injunctive relief as a result of Defendant's wrongful conduct.

148. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the unauthorized disclosures that have taken place.

**COUNT I**
**INVASION OF PRIVACY**
**(On Behalf of Minor Plaintiffs and the Nationwide Class's Children or, alternatively, the Washington Subclass's Children)**

149. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 148 as if fully set forth herein.

150. Plaintiffs, Minor Plaintiffs, Class Members, and the Class Members' children have an interest in: (1) precluding the dissemination and/or misuse of their, or their children's, highly personal and statutorily protected Sensitive Health Information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to the exfiltration and/or unauthorized sharing of their communications without Plaintiffs' and Class Members' knowledge or consent.

151. The Minor Plaintiffs and Class Members' children had a reasonable expectation of privacy in their communications with Defendant via the Website and the communications platforms and services therein.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

152. Plaintiffs and Class Members communicated their children's Sensitive Health Information that they intended for only Defendant to receive and that they understood Defendant would keep private and secure.

153. Defendant's disclosure of the substance and nature of those communications to third parties without the knowledge and informed consent of Plaintiffs and Class Members is an intentional intrusion on Minor Plaintiffs' and Class Members' children's solitude or seclusion.

154. Plaintiffs, Minor Plaintiffs, Class Members, and Class Members' children had a reasonable expectation of privacy given Defendant's Consent Banner and other representations.

155. Moreover, Plaintiffs and Class Members have a general expectation that their communications regarding their children's sensitive, highly personal information would be protected from surreptitious disclosure to third parties.

156. Defendant's disclosure of Minor Plaintiffs' and Class Members' children's Sensitive Health Information coupled with individually identifying information is highly offensive to the reasonable person.

157. As a result of Defendant's actions, Plaintiffs, Minor Plaintiffs, Class Members, and Class Members' children have suffered harm and injury including, but not limited to, an invasion of their privacy rights.

158. Plaintiffs, Minor Plaintiffs, Class Members and Class Members' children have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to compensatory and/or nominal damages.

159. Plaintiffs and Class Members seek appropriate relief for that injury including, but not limited to, damages that will reasonably compensate Plaintiffs and Class Members for the harm to their and their children's privacy interests as a result of the intrusions upon their privacy.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

160. Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendant's actions, directed at injuring Plaintiffs, Minor Plaintiffs, Class Members, and Class Members' children in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

161. Plaintiffs also seek such other relief as the Court may deem just and proper.

**COUNT II**
**NEGLIGENCE**
***(On Behalf of Minor Plaintiffs and the Nationwide Class's Children or, alternatively, the Washington Subclass's Children)***

162. Plaintiffs repeat and reallege the allegations contained in in paragraphs 1 through 148 as if fully set forth herein.

163. Through their use of the Website, Plaintiffs and Class Members provided Defendant with their children's Sensitive Health Information, believing such Information would be kept confidential.

164. By collecting and storing this data, Defendant had a duty of care to use reasonable means to secure and safeguard it from unauthorized disclosure to third parties.

165. Defendant negligently failed to take reasonable steps to protect Minor Plaintiffs' and Class Members' children's Sensitive Health Information from being disclosed to third parties, without their consent, including to the Tracking Tool Providers.

166. Defendant further negligently omitted to inform Plaintiffs and the Class that it would use their children's Sensitive Health Information for marketing purposes, and/or that their children's Sensitive Health Information would be transmitted to third parties.

167. Defendant knew, or reasonably should have known, that Plaintiffs and the Class would not have provided their children's Sensitive Health Information to Defendant had they known that Defendant intended to use that Information for unlawful purposes.


**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

168. Defendant's conduct has caused Plaintiffs, Minor Plaintiffs', Class Members, and Class Members' children to suffer damages by having their highly personal, personally identifiable Sensitive Health Information accessed, stored, and disseminated without their knowledge or consent.

169. Plaintiffs and Class Members are entitled to compensatory, nominal, and/or punitive damages.

170. Defendant's negligent conduct is ongoing, in that it still holds the Sensitive Health Information of Minor Plaintiffs and Class Members' children in an unsafe and unsecure manner. Therefore, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
***(On Behalf of Minor Plaintiffs and the Nationwide Class's Children or, alternatively, the Washington Subclass's Children)***

171. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 148 as if fully set forth herein.

172. When Plaintiffs and Class Members provided their children's Sensitive Health Information to Defendant in exchange for medical products and services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose the Sensitive Health Information without consent.

173. Plaintiffs and Class Members accepted Defendant's offers and provided their children's Sensitive Health Information to Defendant.

174. Plaintiffs and Class Members would not have entrusted Defendant with their children's



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Sensitive Health Information in the absence of an implied contract between them and Defendant obligating Defendant to not disclose Sensitive Health Information without consent.

175. Defendant breached these implied contracts by disclosing Minor Plaintiffs' and Class Members' children's Sensitive Health Information to third parties like the Tracking Tool Providers.

176. As a direct and proximate result of Defendant's breaches of these implied contracts, Plaintiffs, Minor Plaintiffs, Class Members and Class Members' children sustained damages as alleged herein.

177. Plaintiffs and Class Members would not have used Defendant's services, or would have paid substantially less for those services, had they known their children's Sensitive Health Information would be disclosed.

178. Plaintiffs and Class Members are entitled to compensatory, consequential, and/or nominal damages as a result of Defendant's breaches of implied contract.

**COUNT IV**
**UNJUST ENRICHMENT**
***(On Behalf of Minor Plaintiffs and the Nationwide Class's Children or, alternatively, the Washington Subclass's Children)***

179. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 148 as if fully set forth herein.

180. Plaintiffs plead this claim in the alternative to their breach of implied contract claim.

181. Plaintiffs and Class Members conferred a monetary benefit on Defendant in exchange for healthcare services. Specifically, they provided their children's Sensitive Health Information to Defendant which Defendant then utilized for marketing and advertising purposes, as described, *supra*.

182. Defendant knew that Plaintiffs and Class Members conferred a benefit upon them, which Defendant accepted. Defendant profited from the Sensitive Health Information of Minor Plaintiffs and Class Members' children by exchanging it for marketing and advertising services.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

183. In particular, Defendant enriched itself by obtaining the inherent value of Minor Plaintiffs' and Class Members' children's Sensitive Health Information, and by saving the costs it reasonably should have expended on marketing and/or data security measures to secure Minor Plaintiffs' and Class Members' children's Sensitive Health Information.

184. Minor Plaintiffs and Class Members' children, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the privacy of its patients Sensitive Health Information.

185. Under the principles of equity and good conscience, Defendant should not be permitted to retain such benefits obtained by its surreptitious collection and transmission of Minor Plaintiffs' and Class Members' children's Sensitive Health Information.

186. If Plaintiffs and Class Members knew that Defendant had not reasonably secured their children's Sensitive Health Information, they would not have agreed to provide their children's Sensitive Health Information to Defendant.

187. Plaintiffs and Class Members have no adequate remedy at law for this count. An unjust enrichment theory provides the equitable disgorgement of profits even where an individual has not suffered a corresponding loss in the form of money damages.

188. As a direct and proximate result of Defendant's conduct, Minor Plaintiffs and Class Members' children have suffered and will continue to suffer injury.

189. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Minor Plaintiffs and Class Members' children, proceeds that they unjustly received from them, or to refund the amounts that Plaintiffs and Class Members overpaid for Defendant's services.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

**<u>COUNT V</u>**
**VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA"), 18 U.S.C. § 2511(1), *et seq*.**
**Unauthorized Interception, Use, and Disclosure**
***<u>(On Behalf of Minor Plaintiffs and the Nationwide Class's Children)</u>***

190. Plaintiffs repeat and reallege the allegations contained in the paragraphs 1 through 148 as if fully set forth herein.

191. The ECPA protects both sending and receipt of communications.

192. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

193. The transmissions of Minor Plaintiffs' Sensitive Health Information to the Website qualify as "communications" under the ECPA's definition of 18 U.S.C. § 2510(12).

194. <u>Electronic Communications</u>. The transmission of Sensitive Health Information between Plaintiffs and Class Members and the Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

195. <u>Content</u>. The ECPA defines content, when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8) (emphasis added).

196. <u>Interception</u>. The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

device" and "contents … include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

197. Electronical, Mechanical or Other Device. The ECPA defines "electronic, mechanical, or other device" as "any device … which can be used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

a. Plaintiffs' and Class Members' browsers;

b. Plaintiffs' and Class Members' computing devices;

c. Defendant's web-servers; and

d. The Pixel code deployed by Defendant to effectuate the sending and acquisition of customer communications.

198. By utilizing and embedding the Pixels on the Website, Defendant intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

199. Specifically, Defendant intercepted Plaintiffs' and Class Members' electronic communications via the Pixels, which tracked, stored, and unlawfully disclosed Minor Plaintiffs' and Class Members' children's Sensitive Health Information to third parties such as the Tracking Tool Providers.

200. Defendant's intercepted communications include, but are not limited to, communications to/from Plaintiffs and Class Members regarding their children's Sensitive Health Information, including the conditions they sought treatment for, the fact that they are a patient of Seattle Children's, and their search terms for specific doctors or doctors specializing in specific conditions.

201. By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiffs and Class Members to third parties, while knowing or having reason to know that such



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

202. By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiff and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

203. Unauthorized Purpose. Defendant intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State—namely, invasion of privacy, among others.

204. The ECPA provides that a "party to the communication" may be liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C § 2511(2)(d).

205. Defendant is not a party to the communication based on its unauthorized duplication and transmission of communications with Plaintiffs and the Class. However, even assuming Defendant is a party, Defendant's simultaneous, unknown duplication, forwarding, and interception of Minor Plaintiffs' and Class Members' children's Sensitive Health Information does not qualify for the party exemption.

206. Defendant's acquisition of sensitive communications that was used and disclosed to Google was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and individual States nationwide as set forth herein, including:

a. Invasion of privacy;

b. Violations of HIPPA, 42 U.S.C. § 1320d-6(a)(3); and



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

c. Violations of the MHMDA, Wash. Rev. Code Ann. § 19.373.005, *et seq.*

207. Defendant's conduct violated 42 U.S.C. § 1320d-6 in that it used and caused to be used cookie identifiers associated with specific users, including Plaintiffs and Class Members, without user authorization; and disclosed individually identifiable Sensitive Health Information to the Tracking Tool Providers without user authorization.

208. Defendant is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it was a participant in Plaintiffs' and Class Members' communications about their children's Sensitive Health Information on the Website, because it used its participation in these communications to improperly share Minor Plaintiffs' and Class Members' children's Sensitive Health Information with the Tracking Tool Providers and other third-parties that did not participate in these communications, that Plaintiffs and Class Members did not know were receiving their children's Sensitive Health Information, and that Plaintiffs and Class Members did not consent to receive their children's Sensitive Health Information.

209. As such, Defendant cannot viably claim any exception to ECPA liability.

210. Plaintiffs, Minor Plaintiffs, Class Members and Class Members' children have suffered damages as a direct and proximate result of Defendant's invasion of privacy in that:

a. Learning that Defendant has intruded upon, intercepted, transmitted, shared, and used their Sensitive Health Information for commercial purposes has caused Plaintiffs, Minor Plaintiffs, Class Members, and Class Members' children to suffer emotional distress;

b. Defendant received substantial financial benefits from their use of Minor Plaintiffs' and Class Members' children's Sensitive Health Information without providing any value or benefit to Minor Plaintiffs or Class Members' children;

c. Defendant received substantial, quantifiable value from their use of Minor Plaintiffs' and Class Members' children's Sensitive Health Information, such as understanding how people use the Website and determining what ads people see on the Website, without providing any value or benefit to Minor Plaintiffs or Class Members' children;



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

d. Defendant failed to provide Plaintiffs and Class Members with the full value of the services for which they paid, which included a duty to maintain the confidentiality of their children's Sensitive Health Information; and

e. The diminution in value of Minor Plaintiffs' and Class Members' children's Sensitive Health Information and/or the loss of privacy due to Defendant making such Sensitive Health Information, which Plaintiffs and Class Members intended to remain private, no longer private.

211. Defendant intentionally used the wire or electronic communications to increase their profit margins. Defendant specifically used the Tracking Tools to track and utilize Minor Plaintiffs' and Class Members' children's Sensitive Health Information for financial gain.

212. Defendant was not acting under color of law to intercept Plaintiffs' and Class Members' wire or electronic communications.

213. Plaintiffs and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading their privacy via the Pixels.

214. Any purported consent that Defendant may claim they received from Plaintiffs and Class Members was not valid.

215. In sending and acquiring the content of Plaintiffs' and Class Members' communications relating to their use of the Website, Defendant's purpose was tortious, criminal, and designed to violate federal and state legal provisions including a knowing intrusion into a private, place, conversation, or matter that would be highly offensive to a reasonable person.

216. As a result of Defendant's violation of the ECPA, Plaintiffs and the Class are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

**COUNT VI**
**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT ("WCPA")**
**Wash. Rev. Code Ann. § 19.86.010, *et seq.***
***(On Behalf of Minor Plaintiffs and the Washington Subclass's Children)***

217. Plaintiffs repeat and reallege the allegations contained in the paragraphs 1 through 148 as if fully set forth herein.

218. The WCPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Wash. Rev. Code Ann. § 19.86.020. The Washington legislature has instructed that the WCPA should be "liberally construed that its beneficial purposes may be served." Wash. Rev. Code Ann. § 19.86.920.

219. Any violation of the Washington My Health My Data Act constitutes a violation of the WCPA. Wash. Rev. Code Ann. § 19.373.090. As Defendant violated the MHMDA, as set forth above, they are also liable under the WCPA.

220. Defendant additionally violated the WCPA by:

i. Falsely promising that it would keep confidential and not disclose Minor Plaintiffs' and Class Members' children's Sensitive Health Information;

ii. Failing to inform Plaintiffs and Class Members that it would provide their children's Sensitive Health Information to third parties in exchange for advertising and marketing services; and

iii. Surreptitiously collecting and sharing Minor Plaintiffs' and Class Members' children's Sensitive Health Information with third parties.

221. As a result of Defendant's violations of the WCPA, Minor Plaintiffs and Washington Subclass Members' children suffered injury, including the diminished economic value of their Sensitive Health Information, as explained, *supra*.

222. Defendant's violations of the WCPA were, and are, injurious to the public interest because:


**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

i. Defendant has repeatedly collected and shared the Sensitive Health Information of thousands of children, despite its representations to the contrary, and despite the vulnerable nature of its clientele; and

ii. Defendant will continue to collect and disclose the Sensitive Health Information of the children of all users of its Website, absent court intervention.

223. As a result of Defendant's violations of the WCPA, Plaintiffs and Class Members are entitled to all damages available under Wash. Rev. Code Ann. § 19.86.090. including actual damages, treble damages, equitable or declaratory relief, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of Minor Plaintiffs and other Class Members, pray for judgment against Defendant as follows:

A. an Order certifying the Nationwide Class and Washington Subclass, and appointing the Plaintiffs and their Counsel to represent the Class;

B. equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Sensitive Health Information of Minor Plaintiffs and Class Members' children;

C. injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Minor Plaintiffs and Class Members' children;

D. an award of all damages available at equity or law, including, but not limited to, actual, consequential, punitive, statutory and nominal damages, as allowed by law in an amount to be determined;

E. an award of attorney fees, costs, and litigation expenses, as allowed by law;

F. prejudgment interest on all amounts awarded and

G. all such other and further relief as this Court may deem just and proper.

///

///



**EMERY | REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of Minor Plaintiffs and other members of the proposed Class, hereby demand a jury trial on all issues so triable.

Dated: May 22, 2026

Respectfully submitted,

*/s/ M. Anderson Berry*
M. Anderson Berry WSBA #63160
Gregory Haroutunian*
Brandon P. Jack*
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Sonjay C. Singh*
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, Maryland 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Alyssa Tolentino*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: atolentino@sirillp.com

**pro hac vice admission forthcoming*